AMERICAN MEDICAL INTERNATIONAL, INC. and
St. Mary's Hospital *v.* ARKANSAS BLUE CROSS AND
BLUE SHIELD, A Mutual Insurance Co.

88-259                                         773 S.W.2d 831

Supreme Court of Arkansas
Opinion delivered July 17, 1989
[Rehearing denied September 11, 1989.]

*Wallace, Dover & Dixon, P.A.*, by: *Charles R. Nestrud* and
*Janie W. McFarlin,* for appellant.

*Robert Cabe*, General Counsel, Arkansas Blue Cross & Blue

Shield; and *Gordon & Gordon, P.A.*, for appellee.

JACK HOLT, JR., Chief Justice. Appellant St. Mary's Hospital is a wholly owned subsidiary of separate appellant American Medical International ("AMI"). In 1987, St. Mary's and AMI brought suit against appellee Arkansas Blue Cross and Blue Shield ("ABCBS") seeking a declaratory judgment as to whether ABCBS could refuse to honor patient assignments of insurance benefits to medical care providers such as St. Mary's. Summary judgment was entered in favor of ABCBS premised on a right to disallow assignments. St. Mary's brings this appeal. We reverse.

St. Mary's Hospital admitted several patients in 1987 who were insured by ABCBS and who were in need of the hospital's services. Apparently, the admission forms provided by St. Mary's and completed by its patients contain provisions whereby the patients authorize direct payment to the hospital of any indemnity insurance benefits otherwise payable to the insureds for services provided by the hospital. Other provisions purport to actually assign the benefits for application to the patients' bills. On the other hand, the insurance contracts or policies written by ABCBS and executed by its insureds apparently contain provisions whereby indemnities or proceeds payable under the policies may be assigned only upon approval by ABCBS.

Acting pursuant to language in its admissions forms, St. Mary's, as purported assignee of the right to its patients' insurance benefits, sought payment from ABCBS. ABCBS refused to honor the assignments for two reasons. First, the assignments had not been approved as required in ABCBS's contracts with its insured. Second, in its pleadings, answer to interrogatories, and admissions of fact, ABCBS conceded a practice whereby patient assignments of insurance benefits by its insureds were not honored if the assignee hospital did not have a "provider contract" with ABCBS. The terms of the provider contracts are not relevant to this appeal; suffice it to say, St. Mary's has no such contract with ABCBS. Suit followed upon ABCBS's refusal to honor the assignments.

The public policy issues concerning an insured's interest in freely assigning the right to payment versus ABCBS's freedom of contract and its right to include provisions against assignment were raised below but never reached. Both parties moved for

summary judgment arguing that the result in this case was controlled by certain of our code provisions.

St. Mary's maintained below that Ark. Code Ann. § 4-58-102 (1987) governed the outcome. That section provides:

> All bonds, bills, notes, agreements, and contracts, in writing, for the payment of money or property, or for both money and property, shall be assignable.

St. Mary's further argued that, as a defense, ABCBS would rely on Ark. Code Ann. § 23-85-114(b)(2) (1987), part of the Arkansas Insurance Code, which provides:

> The following [provision] may be included with [foregoing provisions in a policy of insurance] at the option of the insurer:

> Subject to any written direction of the insured in the application or otherwise, all or a portion of any indemnities provided by this policy on account of hospital, nursing, medical, or surgical services may, at the insurer's option and unless the insured requests otherwise in writing not later than the time of filing proofs of such loss, be paid directly to the hospital or person rendering such services; but it is not required that the service be rendered by a particular hospital or person.

St. Mary's position in its motion for summary judgment was that the assignment statute, section 4-58-102, controlled the assignability of insurance proceeds and that Ark. Code Ann. § 23-85-114(b)(2) did not operate to repeal, amend or alter the law in this regard. ABCBS, in its own motion for summary judgment, responded that section 23-85-114(b)(2) in fact amended the law on assignability, at least in the field of insurance. ABCBS also relied upon Ark. Code. Ann. § 23-79-124 (1987), which in subsection (a) provides:

> A policy may be assignable or not assignable, as provided by its terms.

At the hearing on the cross-motions for summary judgment, ABCBS cited Ark. Code Ann. § 23-86-112 (1987) as further support. That section provides:

> Any group disability policy may, on request by the group policyholder, provide that all or any portion of any indemnities provided by any policy on account of hospital, nursing, medical, or surgical services may, at the insurer's option, be paid directly to the hospital or person rendering such services; but the policy may not require that the service be rendered by a particular hospital or person.

In ruling upon the underlying issue of whether ABCBS could lawfully refuse to honor patient assignments, the chancellor sought to determine whether: (1) the code provisions cited by ABCBS give an insurer the option of paying either the provider or the insured; (2) if so, do those provisions conflict with the general law on assignability; and (3) in that event, do the insurance code provisions repeal the law on assignability to the extent the laws conflict?

In his decree, the chancellor ruled there was an irreconcilable conflict between the insurance code provisions and the general law on assignability (no mention was made of section 23-79-124). He further concluded the insurance code provisions repealed the general law to the extent of any inconsistency. The chancellor's decree contains the following language:

> An individual insured, as opposed to a person covered under a group policy, may, by a timely written direction, prevent an insurer from making payment directly to the provider of services; however, an individual insured is not empowered by that statute to compel an insurer to pay directly to a provider . . . *The ABCBS policies, as authorized by statute . . . reserve to ABCBS the option to pay a provider directly, or to pay the covered person.* [Emphasis ours.]

On appeal, St. Mary's makes three arguments with several subdivisions. First, it is argued that as a matter of law the chancellor erred as to which code provision controls and whether the provisions actually conflict. St. Mary's contends the code provisions can be read together and argues the insurance code provisions apply only to the direction of payment by an insurer, not an insured's ability to assign "the right to receive payment."

St. Mary's second point on appeal is identical to its first but

applies to group policies rather than individual policies. On this issue, St. Mary's additionally argues the court erred in granting summary judgment because this was an "11th hour" argument by ABCBS and because there remained a genuine issue of fact as to the definition of "policyholder" as that term is used in the ABCBS policies, in Ark. Code Ann. § 23-86-112 (1987), and in the ABCBS provider contracts.

■ St. Mary's third and final argument is that the chancellor's ruling conflicts with the intent and purpose of the insurance code. We need not reach this issue as it was not raised below. Arguments made for the first time on appeal will not be addressed by this court. *O'Bryant* v. *Horn*, 297 Ark. 617, 764 S.W.2d 445 (1989).

■ Section 23-85-114(b)(2), relied upon by the chancellor and by ABCBS, provides that subject to any written direction of the insured in the application or otherwise, all or a portion of any indemnities provided by a policy on account of hospital, nursing, medical, or surgical services may, at the insurer's option and unless the insured requests otherwise in writing not later than the time of filing proofs of such loss, be paid directly to the hospital or person rendering such services; but it is not required that the service be rendered by a particular hospital or person. We give the words their usual and ordinary meaning, and if there is no ambiguity we give the provision effect just as it reads. *Woodruff* v. *Shockley*, 297 Ark. 595, 764 S.W.2d 431 (1989); *Chandler* v. *Perry-Casa Public Schools*, 286 Ark. 170, 690 S.W.2d 349 (1985).

■ Clearly, section 23-85-114(b)(2) provides the insurer with the option of drafting insurance policies to stipulate that payment shall be made to the provider of medical care services rather than to the insured. The apparent purpose underlying the legislation is to assist hospitals or health service agencies in receiving payment for services provided. Equally clear is that the insured can prevent the payment of benefits to the provider by so requesting, in writing, at the time of application or when submitting proof of loss. The section therefore contemplates that the insurer's option to direct payment is governed by the will of the insured, so long as the insured is timely in his request. Finally, the section provides that any exercise by the

insurer of his option to make payment directly to the provider of services should have no effect on the insured's choice of hospitals or care providers.

The chancellor concluded section 23-85-114(b)(2) does not authorize the insured to "compel" the insurer to pay the provider. Simply because this section does not provide that an insured may compel payment to be made to the provider does not mean other code provisions, such as the law on assignments, might not allow the insured to do so.

■ The obvious effect of section 23-85-114(b)(2) is that the insured gets paid directly, unless the insurer prefers to pay the provider, so long as the insured does not object. For the most part, this provision exists for the purpose of allowing the parties to directly benefit the provider and in no way conflicts with section 4-58-102, which similarly would allow insured to directly benefit medical care providers by assigning their right to receive insurance proceeds. For this reason, we conclude that the chancellor erred in ruling that such a conflict existed and erred in ruling that the insurance code provisions repealed the general law on assignments. In sum, we find no conflict between sections 23-85-114(b)(2) and 4-58-102.

Because the chancellor erroneously determined that there was an irreconcilable conflict between sections 23-85-114(b)(2) and 4-58-102 causing the insurance code provisions to repeal the general law on assignments, we reverse for proceedings not inconsistent with this opinion.

Reversed.